**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH J. FITZPATRICK *M.D.*** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-4284** |
| | : | |
| **CENTER FOR ADVANCED UROLOGY, LLC T/A MIDLANTIC UROLOGY, ET AL.** | : | |

---

**McHUGH, J.** **DECEMBER 14, 2020**

**MEMORANDUM**

This case primarily involves a business dispute between Plaintiff, Kenneth J. Fitzpatrick, M.D. and his former medical practice and professional colleagues. Plaintiff filed a nine-count complaint in state court. Six of those counts set forth state law claims based upon three separate business agreements. Three counts in the complaint raise a claim of discrimination based upon disability—two under federal law, and one under a related Pennsylvania statute. Defendants removed the action contending that the federal discrimination claims are controlling and seeking supplemental jurisdiction as to the state law claims. Plaintiff now moves to sever the discrimination claims and remand the remainder of this action to state court.

Even if one were to accept that all the claims revolve around a "common nucleus of facts"—a questionable proposition—state law claims predominate. Plaintiff's motion to sever and remand will therefore be granted.

## I. FACTUAL BACKGROUND

Plaintiff is a urologist who has practiced for twenty-seven years. Compl. ¶16, ECF No. 1, Ex. A. Defendants are Center for Advanced Urology, LLC t/a Midlantic Urology ("Midlantic"), Academic Urology of PA, LLC, David J. Ellis, M.D., James F. Squadrito, M.D., Donald H.

Anderson, M.D., William G. Merriam, M.D., and Ilene Wong, M.D. Starting in 2015, Plaintiff served as a member and employee of Midlantic Urology until he was terminated in August 2019. Compl. ¶ 25-26, 148.

Plaintiff's state court complaint asserts seven counts under Pennsylvania law against some or all Defendants, and an additional two counts arising under federal law. Compl. ¶¶ 170-266. Those counts include: (I) Wrongful Termination/Dissociation; (II) Breach of Agreements; (III-IV) Breaches of Fiduciary Duty;[1] (V) Breach of Contract; (VI) Intentional Interference with Existing and Prospective Contractual Relations; (VII) Discrimination/Retaliation under the federal Americans with Disabilities Act ("ADA");[2] (VIII) Discrimination/Retaliation under the Pennsylvania Human Relations Act ("PHRA");[3] (IX) Discrimination/Retaliation under the federal Rehabilitation Act ("RA").[4] ECF No. 7-1 at 2.

The state law claims principally arise out of three agreements conferring rights upon Plaintiff as a member and employee of Midlantic—an Operating Agreement ("OA"), a Care Center Agreement ("CCA"), and a Professional Services Agreement ("PSA"). Compl. ¶ 33.[5] Plaintiff alleges that some or all Defendants abridged his rights under these agreements and breached certain fiduciary duties in violation of Pennsylvania law. These alleged violations

---

[1] Plaintiff's Counts I-III each arise under the Pennsylvania Uniform Limited Liability Company Act of 2016, ("PULLCA"). *See* 15 Pa. C.S. § 8881(a) ("A member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and protect the member's interests, including rights and interests under the operating agreement or this title or arising independently of the membership relationship.").

[2] *See* 42 U.S.C. § 12101 *et seq*.

[3] *See* 43 P.S. § 951 *et seq*.

[4] *See* 29 U.S.C. § 701 *et seq*.

[5] These agreements were not part of the record, so the Court directed counsel to submit them for review as they play a central role in the allegations of the complaint.

occurred during the course of his employment, up to and including his termination, and afterwards. For example, prior to his termination, he alleges that he was not provided an opportunity to cure purported violations of his contract per the terms of the PSA. Compl. ¶ 143. He further alleges that the decision to terminate him did not properly follow the rules set out in the PSA, because it did not result from a vote of all eligible members, and thus violated the OA. Compl. ¶ 150. After the termination, he alleges that Midlantic refused to buy out his shares as required by the CCA. Compl. ¶ 159. The federal claims, and related claim under the PHRA, arise out of allegations that Defendants engaged in a pattern of discrimination and retaliation related to a diagnosis of multiple sclerosis rendered during the course of his employment that culminated in his termination. Compl. ¶ 220-266. Plaintiff seeks to remand Counts I through VI back to state court.

## II. CONTROLLING LEGAL PRINCIPLES

Subject matter jurisdiction as to Plaintiff's federal claims is self-evident. The issue here is whether it is permissible and appropriate to assume jurisdiction over the purely state law claims.[6] Supplemental jurisdiction is controlled by 28 U.S.C. § 1367(a), which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

*Id.* In determining whether the claims are sufficiently intertwined to satisfy the "case or controversy" requirement, "[t]he state and federal claims must derive from a common nucleus of operative facts . . . such that [plaintiff] would ordinarily be expected to try them all in one

[6] Defendants, as the parties removing this action to federal court, bear the burden of establishing federal jurisdiction. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

judicial proceeding." *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

The Third Circuit has recognized that "[t]he test for a "common nucleus of operative facts" is not self-evident. *Lyon*, 45 F.3d at 760. Moreover, "[i]n trying to set out standards for supplemental jurisdiction and to apply them consistently," it has further observed that "like unhappy families, no two cases of supplemental jurisdiction are exactly alike." *Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988), *cert. denied,* 489 U.S. 1078 (1989). [W]hen the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious and federal courts routinely exercise supplemental jurisdiction over the state law claims." *Lyon*, 45 F.3d at 761. But this Circuit has never adopted the position taken by some courts "that even a 'loose' nexus is enough" to satisfy the requirements of Section 1367. *Lyon*, 45 F.3d at 761 (internal citations omitted). Therefore, "tangential overlap of facts is insufficient" to exercise supplemental jurisdiction. *Nanavati*, 857 F.2d at 105.

Even where state and federal law claims satisfy the requirements of Section 1367(a), district courts retain discretion to decline to exercise jurisdiction. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003), *as amended* (Nov. 14, 2003) (quoting *Gibbs*, 383 U.S. at 726 (1966)) ( "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). District courts may decline jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In considering subsection (2), if the state claims substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy

sought," the district court may properly decline to exercise jurisdiction. *De Asencio*, 342 F.3d at 309 (internal citations omitted).

If jurisdiction does not exist or is declined on one of the grounds prescribed by § 1367(c), "the district court shall sever from the action all claims" that are "not within the original or supplemental jurisdiction of the district court," "and shall remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c); *See Stewart v. Lewis*, 2:19-cv-00847-NR, 2019 WL 4267387, at *9 (W.D. Pa. Sep. 10, 2019) (severing state court claims under removal statute).

## III. DISCUSSION

### A. Plaintiff's state law business-related claims and his federal discrimination claims only partially overlap and do not derive from a common nucleus of operative facts.

At the outset, it is undisputed that this Court has original jurisdiction over Plaintiff's federal claims under the ADA and RA per 28 U.S.C. § 1331. Neither is it disputed that this Court has supplementary jurisdiction over Plaintiff's claim under the PHRA, which clearly derives from a "common nucleus of operative facts" as the two federal claims. *See Rinehimer v. Cemcolift*, 292 F.3d 375, 382 (3d Cir. 2002) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)) ("The PHRA is basically the same as the ADA . . . 'and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts.'").

The question is whether the remainder of the case, representing the majority of Plaintiff's claims, is sufficiently intertwined with the claims of discrimination. Although there is some factual overlap between the claims at issue in the present motion and Plaintiff's federal claims, they do not "derive from a common nucleus of operative facts." *Lyon*, 45 F.3d at at 760. To prevail under the ADA a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or

without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (internal citations omitted). And, "[t]o establish a prima facie case of retaliation under the ADA, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[7] *Id.*

Viewed from one perspective, because wrongful termination runs through many of Plaintiff's business-related claims, there is some connection with the discrimination claims. But taking such a broad view would bring a wide range of cases into federal courts where jurisdiction would not otherwise exist. As noted by the Court of Appeals, "[d]istrict courts have resisted expanding supplemental jurisdiction based merely on an employment contract in a variety of federal statutory settings." *Lyon*, 45 F.3d at 763 (declining to exercise supplemental jurisdiction over contract and tort claims arising under state law where court had original jurisdiction over FLSA claim). Upon close review, it becomes clear that the factual connection between the claims here is a loose one.

Count I ("Wrongful Termination/Disassociation") will require an analysis of multiple agreements between the parties, which are only peripherally related to the elements of Plaintiff's claims of discrimination and retaliation. *See Nanavati*, 857 F.2d at 105 ("tangential overlap of

---

[7] The ADA, the RA, and the PHRA, each require very similar evidentiary showings. *See Shaner*, 204 F.3d at 500 (noting that *McDonnell Douglas* analysis applies to ADA disparate treatment and retaliation claims."); *Rinehimer v. Cemcolift*, 292 F.3d 375, 382 (3d Cir. 2002) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("The PHRA is basically the same as the ADA in relevant respects 'and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts.'"); *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995) ("[T]he substantive standards for determining liability [under Section 504 and the ADA] are the same.").

facts is insufficient" to exercise supplemental jurisdiction). Whereas the state law claim grows out of the contractual relationships between the parties—and their relative obligations, acts, and omissions per three separate agreements—, the claims alleging retaliation and discrimination emerge from Plaintiff's diagnosis of M.S. and his exercise of his rights pursuant to the ADA, the RA, and the PHRA. *See* 15 Pa. C.S. § 8881(a); 42 U.S.C. § 12101 *et seq.*; 29 U.S.C. § 701 *et seq.*; 43 P.S. § 951 *et seq*.; Compl. ¶ 33. To prove his state law claim, Plaintiff must show that he and the Defendants were parties to binding agreements, that those agreements obligated Defendants to undertake certain procedures—including a full vote on Plaintiff's termination and a cure period prior to that termination—, that Defendants failed to do so, that such breaches were material, etc. Compl. ¶¶ 143, 150. Although there are points of convergence between this claim and those alleging retaliation and discrimination—namely, the termination itself—they simply do not "derive from a common nucleus of operative facts." *Lyon*, 45 F.3d at 761. In that regard, it bears emphasis that Plaintiff does not need to establish any unlawful motive to prevail on his contractual claim—merely that it violated the terms of the parties' agreement.

Adjudicating Counts II through V will require an analysis of the various business agreements, whether there were procedural violations affecting Plaintiff's rights, the extent to which some or all Defendants were required to buy out Plaintiff's equity interests following his termination, and whether they actually did so. Compl. ¶¶ 182-184, 195, 207, 212. Such an exercise bears no relation to whether Plaintiff's termination was the result of unlawful discrimination; it is governed by the terms of the documents and principles of Pennsylvania business law. Furthermore, regardless of why Defendants terminated Plaintiff, these claims necessarily require an assessment of specific acts or omissions by the Defendants' *following* the termination given the relevant agreements. And while it is true that "district courts will exercise

supplemental jurisdiction if the federal and state claims 'are merely alternative theories of recovery based on the same acts'," *Lyon*, 45 F.3d at 761 (internal citations omitted), Plaintiff here has not specifically alleged that the Defendants' failure to buy back his shares constitutes an example of retaliation. Compl. ¶¶ 220-266; Pl.'s Reply 5, ECF No. 9 (arguing that failure to buy out Plaintiff's equity interests is "very distinct from failing to accommodate him or expressing discriminatory animus"); *see Paul v. Deloitte Touche LLP*, Civil Action No. 06-225-MPT, 2007 WL 2402987, at *7 (D. Del. Aug. 20, 2007) (finding that ADEA claims and breach of contract claims did not derive from a common nucleus of operative facts).

Finally, proving Plaintiff's tort claim under Count VI ("Intentional Interference with Existing and Prospective Contractual Relations") will require extensive inquiry into the role Defendants play at Chester County Hospital and whether for practical purposes Plaintiff is prevented from securing staff privileges there because of his dismissal. *See Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014) (describing the elements of the tortious interference under Pennsylvania common law). This has little to do with Plaintiff's claims under the federal antidiscrimination statutes.

Defendants place significant weight on *E.E.O.C. v. Creative Playthings, Ltd.*. But I do not find it instructive given the facts of this case. *See* 375 F. Supp. 2d 427 (E.D. Pa. 2005). There, the Equal Employment Opportunity Commission investigated the termination of an employee and filed suit against his employer. *Id.* at 429-30. The employee then moved to intervene, asking the court to take supplemental jurisdiction over a number of state law claims, including trade libel and defamation, interference with contracts and business, intentional affliction of emotional distress, and breach of promise. *Id.* The Court agreed to do so, because the factual issues under state law squarely aligned with the EEOC's case. *Id.* at 434-38. In

contrast, this is not a simple employment case. There are three complex interlocking agreements, and Plaintiff is asserting rights as an owner and procedural violations of the business agreements. Moreover, *Creative Playthings* only addressed whether there was a sufficient factual basis to assume jurisdiction under Article III; the Court did not reach the issue of predominance, which, as discussed below, is an important consideration here.[8]

B. Plaintiff's state law claims substantially predominate over his federal claims.

Even assuming that the case or controversy requirement of Article III were met in this instance, I have discretion not to exercise supplemental jurisdiction where the state law claims substantially predominate over the claims that fall within this Court's original jurisdiction. *See* 28 U.S.C.A. § 1367(c); *De Asencio*, 342 F.3d at 308 ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."). State claims may substantially predominate "in terms of proof, . . . the scope of the issues raised, or of the comprehensiveness of the remedy sought." *De Asencio*, 342 F.3d at 309. "Generally, a district court will find substantial predomination . . . where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Id.*

Plaintiff's six state law counts relating to his contractual and business rights substantially predominate over the three counts relating to retaliation, discrimination, and failure to accommodate, both in terms of proof and the scope of the issues raised. Plaintiff served as a member and employee of Midlantic from 2015 to 2019 and alleges that he was a party to three separate agreements which afforded him various rights under Pennsylvania law. Pl.'s Mot. to

[8] Nor is *Boyd v. New Jersey Dep't of Corr.*, No. 12-6612 DRD, 2013 WL 1163507 (D.N.J. Mar. 18, 2013) analogous. That case similarly involved simple employment relationships—not the complex interplay between employment and ownership/membership rights. *Id.* at *1. And like *Creative Playthings*, it did not address the question of predominance. *Id.; see Creative Playthings*, 375 F. Supp. 2d 427.

Sever and Remand 2; Compl. ¶¶ 26, 33. As reviewed above, his state law claims, with their focus on such complex and wide-ranging issues as the violation of required voting procedures in the PSA, the failure of Defendants to buy out Plaintiff's equity interests, and his future opportunity to practice at Chester County Hospital, require many distinct elements of proof compared to what is required to establish a prima facie case under the federal claims. *See De Asencio*, 342 F.3d at 309 (finding that district court abused discretion by exercising jurisdiction over state law claim due, in part, to issue of predomination). Moreover, Plaintiff can prevail on his state law claims without proving a violation of federal law or the PHRA. *See Mitich v. Lehigh Valley Rest. Grp., Inc.*, No. CIV.A. 12-3825, 2012 WL 6209957, at *8 (E.D. Pa. Dec. 12, 2012) (declining to exercise supplemental jurisdiction where plaintiff's state law claims substantially predominated over FCRA claim, despite plaintiff's "assertion that the information in his allegedly illegally obtained credit report played some role in conduct giving rise to his state-law claims").

Defendants place substantial weight on *Nanavati*, *supra*. *See* 857 F.2d 96. In that case there were no complex contract claims such as exist here. They also overlook the unusual posture of *Nanavati* when it reached the Court of Appeals. The Court was in part influenced by the fact that the jurisdictional issue was raised by the plaintiff for the first time following trial, 857 F.2d at 122 n.9, with plaintiff having previously claimed the existence of subject matter jurisdiction existed "over all the state claims." *Id.* at 122 n.5. That expenditure of "time and resources" including a "long trial" figured significantly in the result, and even with all that the case has been deemed to fall "near the line" under Article III. *Lyon*, 45 F.3d at 761.[9] Here, in contrast,

[9] In *Nanavati*, the Third Circuit, having been presented with a jurisdictional challenge after the trial already occurred, would have been hard pressed to find that the trial court had abused its discretion in hearing the state law claims. *Id.* at 104-06. It was instead solely focused on the question of whether the court had the constitutional power to hear the claim and did not squarely address a district court's discretion where state law issues predominate.

Plaintiff proceeded in state court and has promptly moved to remand the non-federal claims except the one specifically alleging discrimination.

In practical terms, Plaintiff can likely achieve all the relief he seeks even if his discrimination claims fall short. Conversely, the federal statutes at issue have no bearing on his rights under the three business agreements at issue. In this instance, exercising supplemental jurisdiction would improperly allow the federal discrimination claims to overshadow the business dispute that is at the heart of this case. *See De Asencio*, 342 F.3d at 309.

**IV. CONCLUSION**

In sum, I find that the state law claims at issue here do not derive from a "common nucleus of operative fact" as Plaintiff's claims sounding in discrimination and retaliation, and thus there is no supplemental jurisdiction over these claims. Furthermore, these claims substantially predominate over Plaintiff's three counts sounding in discrimination and retaliation in terms of proof and the scope of the issues raised.

For the reasons stated, I will grant Plaintiff's Motion to Sever and Remand the state law claims presently under consideration (Counts I-VI). Those claims will be remanded to the Court of Common Pleas for Philadelphia County. An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge